**CANOPY MUSIC INC., R.L. August Music Co., Koppelman Family Music, Bandier Family Music, Fisher Music Corp., Emi Feist Catalog Inc., Mills Music Inc., Gladys Music, Chappell & Co., Inc., Warner Brothers, Inc., Irving Caesar, Cecily Youmans Collins, Vincent Youmans III, David Richard Jones and Donald G. Kahn, Plaintiffs,**

v.

**HARBOR CITIES BROADCASTING, INC., Defendant.**

No. 96–C–190.

United States District Court, E.D. Wisconsin.

Jan. 13, 1997.

914

Quarles & Brady by Margaret C. Kelsey, Milwaukee, WI, for Plaintiffs.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

The plaintiffs filed this copyright infringement suit against the defendant, Harbor Cities Broadcasting, Inc. ["Harbor Cities"], on February 21, 1996. They allege that on March 6, 1993, Harbor–Cities, which operates radio station WAUN–FM in Kewaunee, Wisconsin, knowingly and willfully infringed ten times upon copyrights owned by the plaintiffs. All of the plaintiffs are members of the American Society of Composers, Authors, and Publishers ["ASCAP"], an unincorporated organization to which the plaintiffs have granted a nonexclusive right to license non-dramatic public performances of their copyrighted musical compositions. Presently before the court is the plaintiffs' motion for default judgment, which asks the court permanently to enjoin the defendant from the public performance of all music compositions in ASCAP's repertory, to award statutory damages pursuant to 17 U.S.C. § 504(c)(2), and to award reasonable attorneys' fees and costs.

On February 28, 1996, John Cmeyla, Deputy Sheriff of Kewaunee County, Wisconsin,

properly served Harbor Cities with the summons and complaint. The defendant nevertheless has failed to file an answer or to otherwise enter an appearance. Pursuant to Rule 55(a), Federal Rules of Civil Procedure, the plaintiffs requested on May 16, 1996 that the clerk of court enter default against Harbor Cities. The deputy clerk did so on that same day. The plaintiffs filed the present motion for default judgment on September 20, 1996.

The plaintiffs, along with their motion for default judgment, also filed the affidavit of Kathleen Morley Owens, a senior account executive in the broadcast licensing department of ASCAP. Ms. Owens states that on February 22, 1993, ASCAP terminated the defendant's license to perform the copyrighted music of ASCAP's members because the defendant had defaulted on its account. (Owens aff. ¶ 9) Specifically, she says that the defendant did not comply with its payment and reporting obligations. (Owens aff. ¶ 17–24) Since the termination, Ms. Owens asserts, WAUN–FM "has been performing copyrighted songs in the ASCAP repertory without permission or license from ASCAP, despite clear warning from ASCAP that such performances constitute infringements of copyright." (Owens aff. ¶ 9) Ms. Owens also states that after the termination of WAUN–FM's license, ASCAP engaged James L. Lillemoen to make tape recordings and handwritten logs of WAUN–FM's broadcasts on March 6–7, 1993. (Owens aff. ¶ 34) Mr. Lillemoen subsequently sent the tapes and logs to ASCAP in New York City; both remain in ASCAP's custody and control. (Owens aff. ¶ 35) Based on the tape recordings, Ms. Owens asserts that she "could state with certainty" that "each of the songs listed on Schedule A to the Complaint was performed without authorization by broadcast over WAUN–FM on March 6–7, 1993." (Owens aff. ¶ 36) Schedule A lists ten different songs, including "MacArthur Park," "Red Roses for a Blue Lady," and "I'll See You in My Dreams."

The plaintiffs contend that the defendant's copyright infringement was done "knowingly and willfully." As evidence this allegation, they proffer several letters from ASCAP or its attorneys to the defendant notifying the radio station that any performance of compositions from the ASCAP repertory would constitute copyright infringement. (Owens aff. Ex. A) Ms. Owens also states that ASCAP made more tape recordings of WAUN–FM's broadcasts on April 7–8, 1995 and that these tapes "disclose *additional* evidence of Defendant's continuing infringing conduct." (Owens aff. ¶ 38) (emphasis in original). Furthermore, her affidavit asserts that this is the second lawsuit by ASCAP members against this defendant. (Owens aff. ¶ 12) She maintains that in December of 1983, members of ASCAP filed a "virtually identical" suit against Harbor Cities. (Owens aff. ¶ 12) The parties to that suit settled the matter by the defendant's agreeing to pay $5,982.27 in scheduled installments and ASCAP's agreeing to reinstate WAUN–FM's license. (Owens aff. ¶ 12)

Finally, Ms. Owens estimates, based on license fee reports submitted by Harbor Cities prior to 1995, that if the defendant had been properly licensed, it would owe ASCAP license fees of approximately $22,969.76. (Owens aff. ¶ 39).

*Discussion*

### 1. Injunction

■ The plaintiffs ask the court to enjoin the defendant from further performance of musical works from ASCAP's repertory. 17 U.S.C. § 502(a) provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." The plaintiffs have shown that the defendant infringed upon their copyrights on March 6, 1996 and have stated, with no response by Harbor Cities, that the defendant continues to violate the plaintiffs' rights. By offering proof of the previous lawsuit against the defendant and copies of numerous letters sent to the defendant, the plaintiffs have established that WAUN–FM was on notice of its infringing activity.

A different branch of this court issued a permanent injunction in a very similar case: "It appears that the defendants are likely to

continue their infringing activities unless restrained by this Court. A prior suit in this Court ... did not deter the defendants' course of conduct. Further, the defendants have shown a blatant disregard for the AS-CAP licensing procedures." *Flyte Tyme Tunes v. Miszkiewicz,* 715 F.Supp. 919, 921 (E.D.Wis.1989) (Warren, J.). Indeed, several other district courts have issued injunctions in analogous cases where the defendant had clear notice that it was infringing upon the plaintiffs' copyrights. *See Dream Dealers Music v. Parker,* 924 F.Supp. 1146, 1152–53 (S.D.Ala.1996); *Broadcast Music, Inc. v. R. Bar of Manhattan, Inc.,* 919 F.Supp. 656, 659 (S.D.N.Y.1996); *Coleman v. Payne,* 698 F.Supp. 704, 706–07 (W.D.Mich.1988); *Golden Torch Music Corp. v. Pier III Cafe, Inc.,* 684 F.Supp. 772, 773 (D.Conn.1988).

■ Given the evidence set forth by the plaintiffs, to which the defendant has offered no response, I deem this an appropriate situation in which to issue a permanent injunction barring WAUN–FM from broadcasting any musical compositions in ASCAP's repertory. Although ASCAP itself is not a party, the various plaintiffs represent the interests of all ASCAP members whose rights could potentially be infringed by WAUN–FM, and therefore it is proper to prohibit the defendant from performing any songs to which ASCAP possesses the right to license. *See Cross Keys Publ'g Co. v. Wee, Inc.,* 921 F.Supp. 479, 481 (W.D.Mich.1995).

### 2. Damages

■ The plaintiffs do not ask the court to grant actual damages, but they instead seek statutory damages pursuant to 17 U.S.C. § 504(c). 17 U.S.C. § 504(c)(1) provides:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, and award of statutory damages for all infringements involved in the action ... in a sum of not less than $500 or more than $20,000 as the court considers just.

The second section of the statute, however, allows the plaintiff to recover statutory damages of more than $20,000 when the court finds that the copyright infringement was willful: "In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $100,000." 17 U.S.C. § 504(c)(2).

Specifically, the plaintiffs ask the court to award $4000 for each of the ten infringements. The reason that they seek these damages, they assert, is to deter WAUN–FM from any further infringements. They argue that simply to award what the defendant has "saved" by not paying the licensing fees would do nothing to prevent the radio station from continuing its course of conduct: "To award less would be to reward this defendant for its deliberate failure to comply with the law." The United States Supreme Court has emphasized the deterrence function of awarding statutory damages above and beyond actual damages:

> [A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy.

*F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952); *see also International Korwin Corp. v. Kowalczyk,* 665 F.Supp. 652, 659 (N.D.Ill.1987) ("Moreover, courts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright owners and copyright laws. Rather, defendants must 'be put on notice that it costs less to obey the copyright laws than to violate them.") (citing *Music City Music v. Alfa Foods, Ltd.,* 616 F.Supp. 1001, 1003 (E.D.Va. 1985), *aff'd* 855 F.2d 375 (1988)).

Many courts, finding that the defendants made "knowing and willful" infringements, have followed the approach advocated by the plaintiffs. *See, e.g., Chi–Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229–30 (7th Cir.1991) (upholding the district court's award of three times the amount due under the licensing fees and finding that "when the infringement is willful, the statutory damages award may be designed to penalize the infringer and to deter future violations"); *Cross Keys Publ'g Co.*, 921 F.Supp. at 481 (awarding statutory damages of $8,750 when the defendant owed approximately $2,800 in licensing fees); *Coleman*, 698 F.Supp. at 708 (awarding $5000 for each of ten infringements and saying that the "defendant's lack of respect for the plaintiffs' rights, the copyright laws and the legal system in general (as evidenced by his failure to appear in this action), merit this substantial award"); *Halnat Publ'g Co. v. L.A.P.A., Inc.*, 669 F.Supp. 933, 937–38 (D.Minn.1987) (awarding $3750 in statutory damages when the defendant owed approximately $1770 in licensing fees).

The reasoning applied in the foregoing cases is fully applicable to the case at hand. Not only was the defendant put on notice of the illegality of its actions when it was brought into court the first time, but the plaintiffs, though ASCAP, have repeatedly notified WAUN–FM of its current infringing behavior. The plaintiffs have offered evidence that WAUN–FM performed ten separate infringements on March 6, 1993. Moreover, Harbor Cities has done nothing to show that these flagrant violations of copyright law were somehow limited to that one discrete day.

■ In light of the uncontradicted evidence that the plaintiffs have shown to the court, the court finds, pursuant to 17 U.S.C. § 504(c)(2) that the defendant's copyright infringement was willful. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 512 (7th Cir.1994) (finding that "in determining whether the violation was willful, the trier of fact may consider evidence that the defendant ignored the plaintiff's notices about copyright protection, did not seek advice of an attorney, and passed the matter off as a nuisance" and that "[a] letter informing the defendant of possible infringement clearly provides notice"). Moreover, the plaintiffs' request for $4,000 for each of the ten infringements, for a total statutory award of $40,000, seems reasonable. As stated in Ms. Owens' affidavit, if Harbor Cities had paid its licensing fees, it would owe ASCAP approximately $22,969.76. Awarding these plaintiffs less than twice that amount is certainly not unheard of, *see Chi–Boy Music*, 930 F.2d at 1229–30, and will certainly function to penalize Harbor Cities for its blatant disregard for the plaintiffs' rights under the copyright laws.

### 3. Attorneys Fees and Costs

■ Finally, the plaintiffs ask that the court award them $2,966.50 in attorneys' fees and $232 in costs. Their request is pursuant to 17 U.S.C. § 505, which gives the court discretion to "allow the recovery of full costs" and to "award a reasonable attorney's fee to the prevailing party as part of the costs." The plaintiffs, in their memorandum in support of default judgment, state that they are entitled to attorneys' fees and costs because the defendant could "have substantially reduced the attorneys' fees incurred by Plaintiffs in prosecuting this action if it had accepted any of ASCAP's repeated offers to settle the matter. Defendant did not."

The plaintiffs argument has impressive merit. Exhibit A of Ms. Owens' affidavit contains at least seven letters from the plaintiffs' counsel to the defendant offering to settle the matter for approximately the amount that the defendant would have paid in licensing fees. The court of appeals for the seventh circuit has noted that "a finding of willful infringement will support an award of attorney's fees" and that "[a]ttorney's fees may be awarded for reasons other than simply making the plaintiff whole, such as encouraging the assertion of colorable copyright claims and deterring infringement." *Chi–Boy Music*, 930 F.2d at 1230. The defendant's repeated and overt infringements have undoubtedly made it necessary for the plaintiffs to pursue this claim, first through their offers of settlement and now through formal litigation.

One of plaintiffs' counsel, Ms. Kelsey, has submitted an affidavit summarizing the fees and costs. The court finds that because it is proper to award attorney's fees and costs and because the amounts requested by plaintiffs are reasonable, the plaintiff should have judgment for $2,966.50 as attorneys' fees and $232 as costs.

Therefore, IT IS ORDERED that the defendant, Harbor Cities Broadcasting, Inc., be and hereby is permanently enjoined, pursuant to 17 U.S.C. § 502(a), from broadcasting, without license, any musical compositions from the repertory of the American Society of Authors, Composers, and Publishers.

IT IS ALSO ORDERED that the plaintiffs' motion for judgment by default against defendant Harbor Cities Broadcasting, Inc., be and hereby is granted.

IT IS FURTHER ORDERED that the clerk of court be and hereby is directed to enter a judgment by default in favor of the plaintiffs and against defendant Harbor Cities Broadcasting, Inc., in the amount of $40,-000, plus attorneys' fees of $2,966.50 and costs of $232.