COLUMBIA PICTURES INDUSTRIES, INC.; Buena Vista Pictures Distribution, Inc.; Disney Enterprises, Inc.; Metro–Goldwyn–Mayer Pictures, Inc.; Paramount Pictures Corporation; Tristar Pictures, Inc.; Twentieth Century Fox Film Corporation; United Artists Pictures, Inc.; Universal City Studios, Inc.; Warner Bros., a Division of Time Warner Entertainment Company, L.P.; Columbia Tristar Home Video; Live Home Video, Inc. (Live America Inc.); Twentieth Century Fox Entertainment, Inc., Plaintiffs,

v.

Domingo LANDA, individually and d/b/a Video City and Movie Trak; Jason Frank, individually and d/b/a Take Two Video; and Syed Ahmed, individually and d/b/a Video City, Defendants.

No. 96–1340.

United States District Court, District of Columbia.

June 26, 1997.

**2**

Jennifer A. Lazewski, Ronald Teeple, John Leonard, Defrees & Fiske, Chicago, IL, for plaintiff.

James A. Martinkus, Erwin, Martinkus, Cole & Ansel, Champaign, IL, for defendant Landa.

McLean Arnold, Bloomington, IL, for defendant Frank.

Robert C. Hofmann, Dougherty, Hofmann & Goodwin, Danville, IL, for defendant Ahmed.

## ORDER

McDADE, District Judge.

Before the Court is Plaintiffs' Motion for Summary Judgment. [Doc. # 41]. For the reasons set forth below, Plaintiffs' Motion is **GRANTED.**

### Procedural History & Brief Overview

Plaintiffs, numerous motion picture producers and distributors, filed this action against Defendants, three movie rental store owners, on July 11, 1996. The named Defendants include Domingo Landa, d/b/a VIDEO CITY and MOVIE TRAK, Jason Frank, d/b/a TAKE TWO VIDEO, and Syed Ahmed, d/b/a VIDEO CITY.[1] Plaintiffs Amended Complaint [Doc. # 33] alleges that Defendants illegally duplicated and distributed mo-

---

1. Syed Ahmed is no longer a party in this action pursuant to a Consent Decree entered on January 7, 1997. [Doc. # 54].

tion picture videocassettes in violation of 17 U.S.C. § 106 (Copyright Infringement) and 5 U.S.C. § 1125(a) (Trademark Infringement).

On November 21, 1996, Plaintiffs filed a motion for summary judgment as to Defendants Landa and Frank. Plaintiffs' motion seeks statutory damages pursuant to 17 U.S.C. § 504 and permanent injunction pursuant to 17 U.S.C. § 502. On December 5 and 12, 1996, Defendants Landa and Frank filed motions to extend time in which to respond to Plaintiffs' motion for summary judgment. On December 11 and 16, 1996, the Court granted Defendants' motions, set a responsive pleading deadline, and directed the Clerk of the Court to send a copy of Local Rule 7.1 to all counsel.

On January 6, 1997, Defendant Landa filed a memorandum in opposition to Plaintiffs' motion for summary judgment [Doc. # 53], and a "Statement of Disputed Facts." [Doc. # 52]. Defendant Frank has *not* responded to Plaintiffs motion.

### Local Rules Requirements for Summary Judgment Motions

On December 16, 1996, the Court directed the Clerk of the Court to send a copy of Local Rule 7.1 to all counsel in hopes that Defendants would properly respond to Plaintiffs' motion for summary judgment. Unfortunately, despite the Court's efforts, Defendants have failed to comply with the local rule.

Local Rule 7.1(B) requires the party opposing a motion for summary judgment to file a memorandum of law in opposition to the motion within fourteen (14) calendar days after service of the motion unless the time is extended by the presiding judge for good cause shown. If no response is filed within the time limit, the presiding judge will presume there is no opposition and may rule on the motion without further notice to the parties. Local Rules 7.1(D)(1) and (2) (Amended, May 31, 1996) require that the party moving for summary judgment submit a "Statement of Undisputed Facts," and that the party opposing summary judgment submit a "Response to Statement of Undisputed Facts."

Local Rule 7.1(D)(2) further requires that the RESPONSE TO STATEMENT OF UNDISPUTED FACTS numerically respond to each of the movant's undisputed facts. Local Rule 7.1(D)(2) further provides that:

The party will either *admit* or *contest* the fact. If the fact is contested, the party (1) shall submit a short and plain statement of why the fact is in dispute and (2) cite to discovery material or affidavits that support the contention that the fact is disputed.

█ The Seventh Circuit has repeatedly upheld the strict enforcement of the local rules and has sustained the entry of summary judgment when the non-movant has failed to submit a factual statement in the form required by the local rules. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994); *see also Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103–04 (7th Cir. 1990); *Skagen v. Sears, Roebuck & Co.*, 910 F.2d 1498, 1500 (7th Cir.1990); *Appley v. West*, 929 F.2d 1176, 1179–80 (7th Cir.1991) (per curiam); *Maksym v. Loesch*, 937 F.2d 1237, 1240–41 (7th Cir.1991). When a non-movant fails to submit a "Response to Statement of Undisputed Facts" the non-movant thereby concedes the movant's version of the facts. *Id.*

In the instant action, Defendant Landa, filed a "Statement of Disputed Facts." [Doc. 52]. In its *entirety*, Defendant Landa's Statement of Disputed Facts states:

1. In July, 1996, Defendant Landa operated Video City, 1507 N. Prospect, Champaign IL; Video City, 322 E. Champaign, Rantoul IL; Movie Trak, 1253 E. Grove St., Rantoul IL; Video City, 1101 N. Main, Normal, IL. Landa has since closed Video City on Prospect Avenue in Champaign and Video City in Rantoul.

Defendant Landa did not file a RESPONSE TO STATEMENT OF UNDISPUTED FACTS nor did Defendant Landa numerically respond to each of Plaintiffs' undisputed facts. *See* CDIL–LR 7.1(D)(2). Indeed, as is evident from Landa's Memorandum in Response to Plaintiffs' Motion for Summary Judgment, Defendant Landa concedes that no factual disputes exist. (*See* Doc. # 53 at p. 1–2). Defendant Landa did

submit an affidavit which could conceivably create disputed issues of fact. However, because the affidavit conflicts with the statements in Landa's response memorandum and because Landa failed to comply with the local rule by *not citing* to the affidavit in a RESPONSE STATEMENT OF UNDISPUTED FACTS, the Court will not consider the affidavit in resolving the issues of liability raised by Plaintiffs motion for summary judgment. *See Waldridge*, 24 F.3d at 922; *see also Ehrhart v. Secretary of Health & Human Services*, 969 F.2d 534, 537 (7th Cir. 1992) ("Once again we observe that compelling the court to take up a burdensome and fruitless scavenger hunt for arguments is a drain on its time and resources."). Thus, other than the disputed issue of fact raised in Defendant Landa's Statement of Disputed Facts, the Court finds that Defendant Landa does not dispute Plaintiffs' version of the facts. *See Id.*

Finally, because Defendant Frank did not respond to Plaintiffs' motion, the Court similarly finds that Defendant Frank does not dispute Plaintiffs version of the facts. *See Id.; see also* CDIL–LR 7.1(B). Accordingly, the Court will set forth the *undisputed* facts below.

## BACKGROUND

This copyright and trademark infringement action was brought by thirteen Plaintiffs against Domingo Landa, d/b/a Video City and Movie Trak, Jason Frank, d/b/a Take Two Video, and Syed Ahmed, d/b/a Video City. For the purposes of this motion for summary judgment, only Domingo Landa and Jason Frank remain as Defendants. The following individual Plaintiffs will be collectively referred to as "Plaintiffs." Plaintiffs include: (1) Columbia Pictures Industries, Inc. ("Columbia"), is a corporation duly incorporated under the laws of the State of Delaware; (2) Buena Vista Pictures Distribution, Inc. ("Buena Vista"), is a corporation duly incorporated under the laws of the State of Delaware; (3) Disney Enterprise, Inc. ("Disney"), is a corporation duly incorporated

under the laws of the State of Delaware; (4) Metro–Goldwyn Pictures, Inc. ("Metro–Goldwyn"), is a corporation duly incorporated under the laws of the State of Delaware; (5) Paramount Pictures Corporation ("Paramount"), is a corporation duly incorporated under the laws of the State of Delaware; (6) TriStar Pictures, Inc. ("TriStar"), is a corporation duly incorporated under the laws of the State of Delaware; (7) Twentieth Century Fox Film Corporation ("Twentieth Century"), is a corporation duly incorporated under the laws of the State of Delaware; (8) United Artists Pictures, Inc. ("United Artists"), is a corporation duly incorporated under the laws of the State of Delaware; (9) Universal City Studios, Inc. ("Universal"), is a corporation duly incorporated under the laws of the State of Delaware; (10) Warner Brothers, a division of Time Warner Entertainment Company, ("Warner Bros."), is a limited partnership organized under the laws of the State of Delaware; (11) Columbia/TriStar Home Video ("Columbia/TriStar"), is a joint venture duly organized under the laws of the State of New York; (12) Twentieth Century Fox Home Entertainment, Inc. ("Twentieth Century Home Entertainment"), is a corporation duly incorporated under the laws of the State of Michigan; and (13) LIVE Home Video, Inc. and LIVE America Inc. ("Live Home Video"), are corporations duly incorporated under the laws of the State of Delaware and California. Each Plaintiff is engaged in interstate commerce involving the production, distribution and licensing of copyrighted motion pictures.

Defendant Landa, at all times relevant to this dispute, operated and continues to operate the following video stores:

Video City, 1507 N. Prospect, Champaign, Illinois.

Video City, 322 E. Champaign Ave., Rantoul, Illinois.

Movie Trak, 1253 E. Grove St., Rantoul, Illinois.

Video City, 1101 N. Main, Normal, Illinois.[2]

---

**2.** In his Statement of Disputed Facts, Defendant Landa states that Video City on Prospect Avenue in Champaign and Video City in Rantoul have

been closed. [Doc. # 52]. However, the closure of these video stores is irrelevant for the purposes of determining whether Defendant Landa

Each of the video stores operated by Landa ("the Landa Stores") rents and sells videocassettes of motion pictures to the public.

Defendant Frank, at all times relevant to this dispute, operated and continues to operate the following video stores:

Take Two Video, 710 Eldorado Dr., Bloomington, Illinois.

Take Two Video, 829 East Camp St., East Peoria, Illinois.

Take Two Video, 223 East Main St., Knoxville, Illinois.

Each of the video stores operated by Frank ("the Frank Stores") rents and sells videocassettes of motion pictures to the public.

On July 11, 1996, Plaintiffs filed a complaint and an Application for Order to Clerk to Issue a Writ of Seizure. Accompanying Plaintiffs' complaint was the Affidavit of David R. Hirtz, an investigator for the Motion Picture Association of America ("MPAA"). Mr. Hirtz stated in his sworn Affidavit that from May 14, 1996 to June 14, 1996, he rented or purchased thirty-five illegally duplicated videocassettes from six video stores, including twenty-nine from the Landa stores and three from the Frank stores. In the same affidavit, Mr. Hirtz also stated that he and other MPAA investigators witnessed Defendant Landa transporting videotapes from Defendant Frank's residence located at 1814 Ft. Jesse Road, Normal, Illinois, to the Landa stores on May 21, 1996 and June 4, 1996.

After an *ex parte* hearing before this Court on Plaintiffs' Application for Order to Issue Writ of Seizure, this Court entered an Order directing the Clerk of the Court to issue a Writ of Seizure directing the U.S. Marshal to seize certain items from the premises of the following video stores and residence:

*Defendant Landa Stores:*

Video City, 1507 N. Prospect, Champaign, Illinois.

Video City, 322 E. Champaign Ave., Rantoul, Illinois.

Movie Trak, 1253 E. Grove St., Rantoul, Illinois.

Video City, 1101 N. Main, Normal Illinois.

*Defendant Frank Store & Residence:*

Take Two Video, 710 Eldorado Dr., Bloomington, Illinois.

1814 Ft. Jesse Road, Normal, Illinois.

(*See* Doc. # 11, 7/12/96).[3]

On July 16, 1996, Deputy U.S. Marshals, acting pursuant to the Writ of Seizure, and investigators from the MPAA, entered the above listed premises and seized over four thousand (4,000) videocassettes. Plaintiffs maintain that the seized videocassettes were unauthorized duplicate videocassette tapes of Plaintiffs' copyrighted motion pictures or masters of unauthorized duplicate videocassettes. On July 16, 1996, the U.S. Marshals also seized from the residence located at 1814 Ft. Jesse Road, Normal, Illinois, various items being used in the manufacture of duplicated videocassettes, including seven videotape duplicating machines engaged in the process of duplication, an office-sized Canon color laser copier, sealed packets of blank BASF videotapes, duplicate labels, boxes in various stages of production, adhesive spray, plastic sealer and a paper cutter.[4]

Plaintiffs maintain that they own the copyright or distribution rights to the motion pictures contained on the videocassettes seized on July 16, 1996. Plaintiffs further assert that the seized videocassettes contain trademarks, trade names and designations of origin reflecting and indicating that the videocassettes originated with Plaintiff companies.

The Deputy U.S. Marshals, accompanied by Mr. Hirtz, seized from the premises of the Landa stores over three thousand (3,000) videocassettes. The videocassettes seized from the Landa stores contained two hundred and seven (207) separate motion pictures titles.

U.S. Marshals seized nearly one thousand (1,000) of the videocassette tapes from Take

has violated 17 U.S.C. § 106 (copyright infringement) and/or 1125(a) (trademark infringement).

**3.** Videocassettes from Video City, 1419 N. Bowman, Danville, Illinois, were also seized.

**4.** The U.S. Marshals' Inventory of items seized from the premises of each Landa store was filed with the Court on July 18, 1996.

Two Video located at 710 Eldorado Drive, Bloomington, Illinois, and Defendant Frank's residence located at 1814 Ft. Jesse Road, Normal, Illinois. On or about July 25, 1996, Frank voluntarily surrendered approximately eight hundred sixty-five (865) videocassettes from these locations to Mr. Hirtz or another MPAA investigator under his control. On or about July 16, 1996, and July 24, 1996, Defendant Frank admitted that he produced illegally duplicated videocassettes rented and sold at the video stores from which the U.S. Marshals seized illegally duplicated videocassettes.

Plaintiffs state that each motion picture seized from all locations had been copyrighted in full compliance with the Copyright Act by one of the Plaintiffs or its predecessor in interest. Plaintiffs state further that they have complied, or are in the process of complying with, all statutory formalities required by the Copyright Act, including renewals where required, to maintain the validity of the copyrights in the motion pictures seized. Finally, Plaintiffs maintain that they have never authorized Defendants, by license or otherwise, to duplicate or distribute the motion pictures in dispute.

Plaintiffs have elected to take judgment against Landa and Frank in the amount of statutory damages for each of the alleged infringement. The following list represents the separate motion picture titles seized at the Landa stores on July 16, 1996 and the relevant Plaintiff company claiming copyright infringement:

| | |
|---|---|
| Columbia Pictures Industries, Inc. (including TriStar Pictures and Columbia TriStar Home Video) | 49 works |
| Metro–Goldwyn–Mayer Pictures, Inc. | 16 works |
| Paramount Pictures Corporation | 23 works |
| Twentieth Century–Fox Film Corp. (includes Fox Video, Inc.) | 11 works |
| Universal City Studios, Inc. | 28 works |
| Disney Enterprises, Inc. | 34 works |
| Warner Bros. Inc. | 34 works |
| Live Home Video, Inc. | 12 works |
| TOTAL: | 207 works |

The following list represents motion picture title seized at *all* locations on July 16, 1996, and the relevant Plaintiff company claiming copyright infringement:

| | |
|---|---|
| Columbia Pictures Industries, Inc. (includes TriStar Pictures, Inc. and Columbia TruStar Home Video) | 50 works |
| Disney Enterprises, Inc. (includes Buena Vista Pictures) | 36 works |
| Live Home Video, Inc. | 12 works |
| Metro–Goldwyn–Mayer Pictures, Inc. | 16 works |
| Paramount Pictures Corp. | 24 works |
| Twentieth Century–Fox Film Corp. (includes Twentieth Century Fox Home Entertainment, Inc.) | 14 works |
| Universal City Studios, Inc. | 30 works |
| Warner Bros. | 34 works |
| TOTAL: | 216 works |

## DISCUSSION

### STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Cox v. Acme Health Services, Inc.*, 55 F.3d 1304, 1308 (7th Cir.1995). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995).

The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) If the movant satisfies this burden, the non-movant must set forth specific facts which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *see also Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). A scintilla of evidence in support of the non-moving party's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

Although summary judgment is ordinarily disfavored in copyright infringement cases, *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir.1980), "when the evidence is so overwhelming that a court would be justified in ordering a directed verdict at trial, it is proper to grant summary judgment." *Steinberg v. Columbia Pictures Industries, Inc.*, 663 F.Supp. 706, 709 (S.D.N.Y.1987) (*citing Silverman v. CBS, Inc.*, 632 F.Supp. 1344, 1352 (S.D.N.Y.1986)).

## Copyright Infringement Liability

Section 501(a) of the Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118 ... is an infringer of the copyright." *See Columbia Pictures Industries, Inc. v. Zakarian*, 1991 WL 93889, *1 (N.D.Ill.1991) (Rovner, J.) (*citing* 17 U.S.C. § 501(a)). Plaintiffs argue that Defendants Landa and Frank have violated the exclusive rights conferred upon them pursuant to 17 U.S.C. § 106. Section 106 of the Copyright Act provides in part:

> Subject to section 107 through 120, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
> (1) to reproduce the copyrighted work in copies or phonorecords;
> (2) to prepare derivative works based upon the copyrighted work;
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; ...

17 U.S.C. § 106.

"An owner of a copyright is protected against unauthorized copying." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508 (7th Cir.1994) (*citing Mazer v. Stein*, 347 U.S. 201, 218, 74 S.Ct. 460, 470–71, 98 L.Ed. 630 (1954)). To establish liability for copyright infringement, plaintiff must prove "(1) ownership of a valid copyright and (2) copying by the defendant." *Wildlife*, 18 F.3d at 507 (*citing Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1295–96, 113 L.Ed.2d 358 (1991)); *see also Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 614 (7th Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982); *Columbia Pictures Industries, Inc. v. Zakarian*, No. 90–4057, 1991 WL 93889, at *4 (N.D.Ill. May 28, 1991).

## Plaintiffs' Ownership of Valid Copyright

Plaintiffs have provided the court with copies of certificates of registrations from the U.S. Register of Copyrights for the motion pictures alleged to have been illegally duplicated and distributed by Defendant Landa and Frank. (*See* Doc. # 33 at Exhibits Tabs 1 and 2 and Exhibits A and B). Such a certificate of registration establishes *prima facie* evidence of the copyright's validity. *Wildlife*, 18 F.3d 502, 507 (7th Cir.1994) (*citing* 17 U.S.C. § 410(c)). Section 410(c) of the Copyright Act provides:

> In any judicial proceeding the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c) (emphasis added).

The following is an exhaustive list of (1) the motion picture titles seized from Defendant Landa and Frank, (2) the relevant Plaintiff company claiming copyright ownership, and (3) the effective date of the copyright registration where available.

### Defendant Landa & Frank

| Motion Picture: | Copyright Owner: | Effective Date: |
| --- | --- | --- |
| (1) 3 NINJAS KNUCKLE UP | COLUMBIA/TRISTAR | MAY 2, 1995 |
| (2) AMERICAN PRESIDENT | COLUMBIA/TRISTAR | MARCH 19, 1996 |
| (3) ARCTIC BLUE | COLUMBIA/TRISTAR | NO CERTIFICATION RECORD |
| (4) BAD BOYS | COLUMBIA/TRISTAR | MAY 2, 1995 |
| (5) BEYOND RANGOON | COLUMBIA/TRISTAR | MARCH 19, 1996 |
| (6) BLUE FLAME | COLUMBIA/TRISTAR | OCTOBER 21, 1993 |

| Motion Picture: | Copyright Owner: | Effective Date: |
|---|---|---|
| (7) BORN WILD | COLUMBIA/TRISTAR | NO CERTIFICATION RECORD |
| (8) CANDY MAN | COLUMBIA/TRISTAR | JANUARY 12, 1993 |
| (9) CITY SLIKERS II; ... | COLUMBIA/TRISTAR | JULY 29, 1994 |
| (10) DEATH WISH | COLUMBIA/TRISTAR | JANUARY 28, 1995 |
| (11) DESPERADO | COLUMBIA/TRISTAR | SEPTEMBER 11, 1995 |
| (12) DEVIL IN A BLUE DRESS | COLUMBIA/TRISTAR | OCTOBER 25, 1995 |
| (13) DELORES CLAIBORNE | COLUMBIA/TRISTAR | APPLICATION FOR CERT. |
| (14) DRACULA: DEAD AND ... | COLUMBIA/TRISTAR | MARCH 21, 1996 |
| (15) FIRST KNIGHT | COLUMBIA/TRISTAR | JULY 18, 1995 |
| (16) FORGET PARIS | COLUMBIA/TRISTAR | APPLICATION FOR CERT. |
| (17) HEAVY METAL | COLUMBIA/TRISTAR | SEPTEMBER 29, 1981 |
| (18) HIDEAWAY | COLUMBIA/TRISTAR | APRIL 3, 1995 |
| (19) HIGHER LEARNING | COLUMBIA/TRISTAR | FEBRUARY 13, 1995 |
| (20) I LOVE YOU TO DEATH | COLUMBIA/TRISTAR | MAY 22, 1990 |
| (21) IMMORTAL BELOVED | COLUMBIA/TRISTAR | FEBRUARY 17, 1995 |
| (22) INDIAN IN THE CUPBOARD | COLUMBIA/TRISTAR | SEPTEMBER 18, 1995 |
| (23) JAMANJI | COLUMBIA/TRISTAR | JANUARY 11, 1996 |
| (24) JUROR, THE | COLUMBIA/TRISTAR | APPLICATION FOR CERT. |
| (25) JURY DUTY | COLUMBIA/TRISTAR | JULY 18, 1995 |
| (26) LEGENDS OF THE FALL | COLUMBIA/TRISTAR | JANUARY 27,.1995 |
| (27) LITTLE WOMAN | COLUMBIA/TRISTAR | JANUARY 27, 1995 |
| (28) LOVE & HUMAN REMAINS | COLUMBIA/TRISTAR | NO CERTIFICATION RECORD |
| (29) MAGIC IN THE WATER | COLUMBIA/TRISTAR | NOVEMBER 28, 1995 |
| (30) MAN'S BEST FRIEND | COLUMBIA/TRISTAR | DECEMBER 16, 1993 |
| (31) MARY SHELLEY'S FRANK.. | COLUMBIA/TRISTAR | NOVEMBER 14, 1994 |
| (32) MIXED NUTS | COLUMBIA/TRISTAR | JANUARY 27, 1995 |
| (33) MONEY TRAIN | COLUMBIA/TRISTAR | DECEMBER 11, 1995 |
| (34) NAKED IN NEW YORK | COLUMBIA/TRISTAR | NO CERTIFICATION RECORD |
| (35) NET, THE | COLUMBIA/TRISTAR | SEPTEMBER 6, 1995 |
| (36) NEVER TALK TO STRANG.. | COLUMBIA/TRISTAR | NOVEMBER 29, 1995 |
| (37) NEW YORK COP | COLUMBIA/TRISTAR | NO CERTIFICATION RECORD |
| (38) PARTY GIRL | COLUMBIA/TRISTAR | MARCH 14, 1995 |
| (39) PROFESSIONAL, THE | COLUMBIA/TRISTAR | OCTOBER 28, 1994 |
| (40) QUICK & THE DEAD ... | COLUMBIA/TRISTAR | FEBRUARY 27, 1995 |
| (41) ROAD TO WELLVILLE ... | COLUMBIA/TRISTAR | FEBRUARY 27, 1995 |
| (42) RUN OF THE COUNTRY ... | COLUMBIA/TRISTAR | MARCH 11, 1996 |
| (43) SECRET OF ROAN INISH.. | COLUMBIA/TRISTAR | MARCH 14, 1994 |
| (44) SENSE & SENSIBILITY | COLUMBIA/TRISTAR | JANUARY 17, 1996 |
| (45) SHAWSHANK REDEMPTION | COLUMBIA/TRISTAR | DECEMBER 5, 1994 |
| (46) SHOW, THE | COLUMBIA/TRISTAR | OCTOBER 20, 1995 |
| (47) STRANGER, THE | COLUMBIA/TRISTAR | MARCH 13, 1995 |
| (48) TO DIE FOR | COLUMBIA/TRISTAR | NOVEMBER 1, 1995 |
| (49) WIDOW'S PEAK | COLUMBIA/TRISTAR | APPLICATION FOR CERT. |
| (1) BYE BYE LOVE | DISNEY/BUENA VISTA | MARCH 15, 1995 |
| (2) CHILDREN OF THE CORN.. | DISNEY/BUENA VISTA | NO CERTIFICATION RECORD |
| (3) CLERKS | DISNEY/BUENA VISTA | NO CERTIFICATION RECORD |
| (4) CRIMSON TIDE | DISNEY/BUENA VISTA | JUNE 6, 1995 |
| (5) CROSSING GUARD, THE | DISNEY/BUENA VISTA | AUGUST 4, 1995 |
| (6) DANGEROUS MINDS | DISNEY/BUENA VISTA | AUGUST 31, 1995 |
| (7) DEAD PRESIDENTS | DISNEY/BUENA VISTA | NOVEMBER 1, 1995 |
| (8) ENGLISHMEN WHO WENT... | DISNEY/BUENA VISTA | AUGUST 3, 1995 |
| (9) FATHER OF THE BRIDE ... | DISNEY/BUENA VISTA | DECEMBER 28, 1995 |
| (10) GLASS SHIELD, THE | DISNEY/BUENA VISTA | AUGUST 10, 1995 |
| (11) HEAVY WEIGHTS | DISNEY/BUENA VISTA | FEBRUARY 27, 1995 |
| (12) INNOCENT, THE | DISNEY/BUENA VISTA | JULY 20, 1994 |
| (13) JERKY BOYS, THE | DISNEY/BUENA VISTA | FEBRUARY 10, 1995 |
| (14) JUDGE DREDD | DISNEY/BUENA VISTA | JUNE 30, 1995 |
| (15) MAD LOVE | DISNEY/BUENA VISTA | JUNE 6, 1995 |
| (16) MAN OF THE HOUSE | DISNEY/BUENA VISTA | MARCH 23, 1995 |
| (17) MEN OF WAR | DISNEY/BUENA VISTA | JANUARY 24, 1995 |
| (18) MIGHTY APHRODITE | DISNEY/BUENA VISTA | NOVEMBER 13, 1995 |
| (19) MR. HOLLAND'S OPUS | DISNEY/BUENA VISTA | DECEMBER 7, 1995 |
| (20) MURIEL'S WEDDING | DISNEY/BUENA VISTA | APPLICATION FOR CERT. |
| (21) NIXON | DISNEY/BUENA VISTA | FEBRUARY 15, 1996 |
| (22) OPERATION DUMBO DROP | DISNEY/BUENA VISTA | AUGUST 14, 1995 |
| (23) POWDER | DISNEY/BUENA VISTA | NOVEMBER 28, 1995 |
| (24) PROPHECY, THE | DISNEY/BUENA VISTA | AUGUST 15, 1995 |
| (25) PULP FICTION | DISNEY/BUENA VISTA | JULY 21, 1995 |
| (26) PYROMANIAC'S LOVE ... | DISNEY/BUENA VISTA | MAY 12, 1995 |
| (27) ROOMMATES | DISNEY/BUENA VISTA | NO CERTIFICATION RECORD |
| (28) SCARLET LETTER, THE | DISNEY/BUENA VISTA | OCTOBER 23, 1995 |
| (29) SMOKE | DISNEY/BUENA VISTA | AUGUST 1, 1995 |
| (30) TALL TALE | DISNEY/BUENA VISTA | APRIL 5, 1995 |
| (31) TIE THAT BINDS, THE | DISNEY/BUENA VISTA | AUGUST 24, 1995 |

| Motion Picture: | Copyright Owner: | Effective Date: |
|---|---|---|
| (32) TOM AND HUCK | DISNEY/BUENA VISTA | JANUARY 16, 1996 |
| (33) TOM & VIV | DISNEY/BUENA VISTA | NO CERTIFICATION RECORD |
| (34) WHILE YOU WERE SLEEP... | DISNEY/BUENA VISTA | MAY 3, 1995 |
| (1) CUTTHROAT ISLAND | LIVE HOME VIDEO | DECEMBER 22, 1995 |
| (2) DANGEROUS PASSION | LIVE HOME VIDEO | MARCH 19, 1990 |
| (3) EYE OF AN ANGEL | LIVE HOME VIDEO | NO CERTIFICATION RECORD |
| (4) FALL TIME | LIVE HOME VIDEO | NO CERTIFICATION RECORD |
| (5) LITTLE ODESSA | LIVE HOME VIDEO | NO CERTIFICATION RECORD |
| (6) MUTANT SPECIES | LIVE HOME VIDEO | APPLICATION FOR CERT. |
| (7) OUT OF SYNC | LIVE HOME VIDEO | NO CERTIFICATION RECORD |
| (8) PORTRAITS OF A KILLER | LIVE HOME VIDEO | NO CERTIFICATION RECORD |
| (9) TAKEOVER, THE | LIVE HOME VIDEO | NO CERTIFICATION RECORD |
| (10) TOP DOG | LIVE HOME VIDEO | NO CERTIFICATION RECORD |
| (11) TRACKS OF A KILLER | LIVE HOME VIDEO | NO CERTIFICATION RECORD |
| (12) WITHOUT MERCY | LIVE HOME VIDEO | NO CERTIFICATION RECORD |
| (1) BIO-DOME | METRO-GOLDWYN | JANUARY 17, 1996 |
| (2) CLEAN SLATE | METRO-GOLDWYN | MAY 11, 1994 |
| (3) CONVICT COWBOY | METRO-GOLDWYN | NO CERTIFICATION RECORD |
| (4) FLUKE | METRO-GOLDWYN | FEBRUARY 13, 1996 |
| (5) GET SHORTY | METRO-GOLDWYN | FEBRUARY 12, 1996 |
| (6) GOLDENEYE | METRO-GOLDWYN | FEBRUARY 12, 1996 |
| (7) HACKERS | METRO-GOLDWYN | APPLICATION FOR CERT. |
| (8) LEAVING LAS VEGAS | METRO-GOLDWYN | NO CERTIFICATION RECORD |
| (9) LORD OF ILLUSIONS | METRO-GOLDWYN | SEPTEMBER 7, 1995 |
| (10) RICHARD III | METRO-GOLDWYN | FEBRUARY 2, 1996 |
| (11) ROB ROY | METRO-GOLDWYN | SEPTEMBER 19, 1995 |
| (12) SHOWGIRLS | METRO-GOLDWYN | SEPTEMBER 27, 1995 |
| (13) SPECIES | METRO-GOLDWYN | SEPTEMBER 7, 1995 |
| (14) SPEECHLESS | METRO-GOLDWYN | JANUARY 23, 1995 |
| (15) TANK GIRL | METRO-GOLDWYN | APPLICATION FOR CERT. |
| (16) WILD BILL | METRO-GOLDWYN | APRIL 26, 1996 |
| (1) ANDRE | PARAMOUNT | OCTOBER 11, 1994 |
| (2) BRADY BUNCH MOVIE, THE | PARAMOUNT | MARCH 6, 1995 |
| (3) BRAVEHEART | PARAMOUNT | JUNE 20, 1995 |
| (4) CLUELESS | PARAMOUNT | SEPTEMBER 18, 1995 |
| (5) CONGO | PARAMOUNT | JULY 24, 1995 |
| (6) DROP ZONE | PARAMOUNT | JANUARY 9, 1995 |
| (7) HOME FOR THE HOLIDAYS | PARAMOUNT | OCTOBER 27, 1995 |
| (8) I.Q. | PARAMOUNT | FEBRUARY 7, 1995 |
| (9) JADE | PARAMOUNT | OCTOBER 23, 1995 |
| (10) LOSING ISAIAH | PARAMOUNT | MAY 9, 1995 |
| (11) NICK OF TIME | PARAMOUNT | FEBRUARY 1, 1996 |
| (12) NOBODY'S FOOL | PARAMOUNT | FEBRUARY 7, 1995 |
| (13) PONTIAC MOON | PARAMOUNT | MAY 8, 1995 |
| (14) SABRINA | PARAMOUNT | DECEMBER 15, 1995 |
| (15) SISTER-IN-LAW, THE | PARAMOUNT | JUNE 8, 1995 |
| (16) STAR TREK GENERATIONS | PARAMOUNT | JANUARY 9, 1995 |
| (17) STUART SAVES HIS FAMILY | PARAMOUNT | SEPTEMBER 18, 1995 |
| (18) TALL, DARK, & DEADLY | PARAMOUNT | NO CERTIFICATION RECORD |
| (19) THROUGHT THE EYES ... | PARAMOUNT | OCTOBER 12, 1993 |
| (20) TOMMY BOY | PARAMOUNT | MAY 24, 1995 |
| (21) VAMPIRE IN BROOKLYN | PARAMOUNT | JANUARY 31, 1996 |
| (22) VIRTUOSITY | PARAMOUNT | SEPTEMBER 18, 1995 |
| (23) WHEN THE DARK MAN CALLS | PARAMOUNT | NO CERTIFICATION RECORD |
| (1) BROKEN ARROW | TWENTIETH CENTURY | FEBRUARY 7, 1996 |
| (2) BUSHWACKED | TWENTIETH CENTURY | JULY 27, 1995 |
| (3) DIE HARD WITH A VENG ... | TWENTIETH CENTURY | MAY 17, 1995 |
| (4) DUNSTON CHECKS IN | TWENTIETH CENTURY | JANUARY 11, 1996 |
| (5) FRENCH KISS | TWENTIETH CENTURY | MAY 8, 1995 |
| (6) KISS OF DEATH | TWENTIETH CENTURY | APRIL 20, 1995 |
| (7) NELL | TWENTIETH CENTURY | DECEMBER 16, 1994 |
| (8) NINE MONTHS | TWENTIETH CENTURY | JULY 13, 1995 |
| (9) STRANGE DAYS | TWENTIETH CENTURY | OCTOBER 11, 1995 |
| (10) TRAPPED IN PARADISE | TWENTIETH CENTURY | NOVEMBER 30, 1994 |
| (11) WALK IN THE CLOUDS, A | TWENTIETH CENTURY | JUNE 15, 1995 |
| (1) 12 MONKEYS | UNIVERSAL | DECEMBER 20, 1995 |
| (2) APOLLO 13 | UNIVERSAL | JULY 10, 1995 |
| (3) BALTO | UNIVERSAL | NO CERTIFICATION RECORD |
| (4) BEASTMASTER: THE EYE ... | UNIVERSAL | NO CERTIFICATION RECORD |
| (5) BILLY MADISON | UNIVERSAL | AUGUST 14, 1995 |
| (6) CASINO | UNIVERSAL | NOVEMBER 15, 1995 |

| Motion Picture: | Copyright Owner: | Effective Date: |
| --- | --- | --- |
| (7) CLOCKERS | UNIVERSAL | OCTOBER 2, 1995 |
| (8) CURE, THE | UNIVERSAL | JUNE 29, 1995 |
| (9) DARKMAN II: ... | UNIVERSAL | OCTOBER 17, 1995 |
| (10) DEAD AIR | UNIVERSAL | JUNE 26, 1995 |
| (11) EBB TIDE | UNIVERSAL | NO CERTIFICATION RECORD |
| (12) GOLD DIGGERS | UNIVERSAL | NO CERTIFICATION RECORD |
| (13) HAUNTING WE WILL GO, A | UNIVERSAL | JUNE 6, 1978 |
| (14) HOW TO MAKE AN AMERICAN | UNIVERSAL | OCTOBER 10, 1995 |
| (15) JUNIOR | UNIVERSAL | NOVEMBER 23, 1994 |
| (16) MAJOR PAYNE | UNIVERSAL | JUNE 29, 1995 |
| (17) MIRAGE | UNIVERSAL | MARCH 6, 1995 |
| (18) NEW JERSEY DRIVE | UNIVERSAL | NO CERTIFICATION RECORD |
| (19) RADIOLAND MURDERS | UNIVERSAL | FEBRUARY 1, 1995 |
| (20) RED SCORPION 2 | UNIVERSAL | JUNE 8, 1994 |
| (21) RIVER WILD, THE | UNIVERSAL | SEPTEMBER 9, 1994 |
| (22) SUDDEN DEATH | UNIVERSAL | APPLICATION FOR CERT. |
| (23) TALES FROM THE CRYPT ... | UNIVERSAL | JUNE 29, 1995 |
| (24) TO WONG FOO THANKS ... | UNIVERSAL | OCTOBER 17, 1995 |
| (25) TREMORS II: AFTERSHOCK | UNIVERSAL | NO CERTIFICATION RECORD |
| (26) VILLAGE OF THE DAMNED | UNIVERSAL | APPLICATION FOR CERT. |
| (27) WAR, THE | UNIVERSAL | FEBRUARY 1, 1995 |
| (28) WATERWORLD | UNIVERSAL | AUGUST 3, 1995 |
| | | |
| (1) 3 WISHES | WARNER BROS. | NOVEMBER 2, 1995 |
| (2) ASSASSINS | WARNER BROS. | OCTOBER 31, 1995 |
| (3) BODY LANGUAGE | WARNER BROS. | AUGUST 23, 1995 |
| (4) BOYS ON THE SIDE | WARNER BROS. | APRIL 21, 1995 |
| (5) BRIDGES OF MADISON | WARNER BROS. | JUNE 29, 1995 |
| (6) CIRCLE OF FRIENDS | WARNER BROS. | APRIL 10, 1995 |
| (7) COBB | WARNER BROS. | MARCH 8, 1995 |
| (8) COPYCAT | WARNER BROS. | NOVEMBER 15, 1995 |
| (9) DEMOLITION MAN | WARNER BROS. | DECEMBER 7, 1993 |
| (10) DESTINY TURNS ON THE ... | WARNER BROS. | NO CERTIFICATION RECORD |
| (11) DISCLOSURE | WARNER BROS. | FEBRUARY 6, 1995 |
| (12) DR. JEKYLL & MS. HYDE | WARNER BROS. | OCTOBER 6, 1995 |
| (13) EMPIRE RECORDS | WARNER BROS. | NOVEMBER 15, 1995 |
| (14) EXIT TO EDEN | WARNER BROS. | OCTOBER 21, 1994 |
| (15) FAIR GAME | WARNER BROS. | DECEMBER 7, 1995 |
| (16) GRUMPIER OLD MEN | WARNER BROS. | JANUARY 29, 1996 |
| (17) HEAT | WARNER BROS. | JANUARY 31, 1996 |
| (18) HELLBOUND | WARNER BROS. | PENDING CERTIFICATION |
| (19) INDICTMENT: ... | WARNER BROS. | JULY 14, 1995 |
| (20) INTERVIEW WITH THE ... | WARNER BROS. | FEBRUARY 13, 1995 |
| (21) JUST CAUSE | WARNER BROS. | APRIL 3, 1995 |
| (22) LAST OF THE DOGMEN | WARNER BROS. | OCTOBER 12, 1995 |
| (23) MOSQUITO COAST, THE | WARNER BROS. | MARCH 13, 1987 |
| (24) MURDER IN THE FIRST | WARNER BROS. | MAY 22, 1995 |
| (25) OUTBREAK | WARNER BROS. | APRIL 17, 1995 |
| (26) SOLDIER BOYZ | WARNER BROS. | OCTOBER 10, 1995 |
| (27) SOMETHING TO ... | WARNER BROS. | SEPTEMBER 20, 1995 |
| (28) STEAL BIG, SEAL LITTLE | WARNER BROS. | NOVEMBER 3, 1995 |
| (29) TALES FROM THE HOOD | WARNER BROS. | JUNE 20, 1995 |
| (30) TWO IF BY SEA | WARNER BROS. | FEBRUARY 1, 1996 |
| (31) UNDER SIEGE 2: ... | WARNER BROS. | AUGUST 8, 1995 |
| (32) WALKING DEAD, THE | WARNER BROS. | NO CERTIFICATION RECORD |
| (33)- WHITE MAN'S BURDEN | WARNER BROS. | OCTOBER 20, 1995 |
| (34) WIDOW'S KISS | WARNER BROS. | NO CERTIFICATION RECORD |

**Defendant Frank [5]**

| | | |
| --- | --- | --- |
| (1) NEXT KARATE KID | COLUMBIA/TRISTAR | SEPTEMBER 22, 1994 |
| (2) BAD COMPANY | DISNEY/BUENA VISTA | FEBRUARY 1, 1995 |
| (3) VIBRATIONS | DISNEY/BUENA VISTA | NO CERTIFICATION RECORD |
| (4) EYE FOR AN EYE | PARAMOUNT | JANUARY 30, 1996 |
| (5) BROTHERS MCMULLEN | TWENTIETH CENTURY | AUGUST 10, 1995 |
| (6) TRUE LIES | TWENTIETH CENTURY | JULY 13, 1994 |
| (7) WAITING TO EXHALE | TWENTIETH CENTURY | DECEMBER 18, 1995 |
| (8) HAPPY GILMORE | UNIVERSAL | NO CERTIFICATION RECORD |
| (9) MALLRATS | UNIVERSAL | NO CERTIFICATION RECORD |

**5.** The motion picture titles seized from Defendant Frank include every motion picture title seized from Defendant Landa. However, nine additional motion picture titles were seized from Defendant Frank.

In sum, 207 motion picture titles were seized from Defendant Landa and 216 motion picture titles were seized from Defendant Frank. Of the 216 motion picture titles seized, Plaintiffs have submitted 182 certificates of registration and/or applications for certificates of registration. Accordingly, the certificates of registration and/or applications for certificates of registration submitted by Plaintiffs constitute *prima facie* evidence of the validity of Plaintiffs copyright ownership. *See* 17 U.S.C. § 410(c).

Plaintiffs have *not* submitted certificates of registration for 34 of the 216 motion picture titles seized. Nevertheless, Plaintiffs maintain that they have "separately complied, or are in the process of complying with all statutory formalities required by the Copyright Act, including renewals where required, to maintain the validity of the copyrights in the motion pictures...." (*See* Doc. # 43 at p. 8, ¶ 41). More importantly, Defendant Landa and Frank do not dispute the fact that Plaintiffs own valid copyrights to all of the motion pictures seized. (*See supra.* at pp. 3–4 (*citing Waldridge*, 24 F.3d at 922); *see also* Doc. # 53 at p. 1, wherein Defendant Landa states "Landa does not dispute that Plaintiffs are the owners of valid copyrights of the motion pictures."). Therefore, for the purposes of the instant motion for summary judgment, the Court finds that Plaintiffs own valid copyrights to the motion pictures involved in this litigation and that the first prong to establish liability for copyright infringement is therefore met. *See Wildlife Express Corp.*, 18 F.3d at 507, (plaintiff claiming copyright infringement must show, *inter alia,* ownership of a valid copyright).

### Evidence of Copying

 Plaintiffs have satisfied the first prong of its copyright infringement claim, i.e., Plaintiffs have shown ownership of a valid copyright for each motion picture that Defendants allegedly duplicated. However, Plaintiffs must also show that Defendants *copied* the protected works. Because "direct evidence of copying is often unavailable," that element "may be inferred where the defendant had *access* to the copyrighted

work and the accused work is *substantially similar* to the copyrighted work." Atari, 672 F.2d at 614 (emphasis added); *Wildlife Express,* 18 F.3d at 508–509; *Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 939 (7th Cir. 1989). Access to copyrighted work may exist when the defendant had an opportunity to view the item protected by the copyright. *Wildlife Express,* 18 F.3d at 508 n. 5. Substantial similarity is determined by the "ordinary observer" test: "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Id.* at 508–09 (quoting *Atari,* 672 F.2d at 614). A duplicate is for all practical purposes a copy of the original. *Columbia Pictures v. Zuniga,* 1995 WL 632249 at *3 (N.D.Ill.1995) (*citing Columbia Pictures v. Zakarian,* 1991 WL 93889 at *3).

### Copying by Defendant Frank

 In the instant action there is direct evidence of copying by Defendant Frank. The *undisputed* sworn affidavit of David R. Hirtz establishes that Plaintiffs owned the copyright or distribution rights of the illegally duplicated videocassettes seized from the Frank Stores and residence. The Hirtz affidavit also establishes that Frank used the basement of his home to illegally duplicate videocassettes and that Frank admitted to producing illegally duplicated videocassettes. Specifically, the Hirtz affidavit states that:

> On July 16, the U.S. Marshals and an MPAA investigator, ... entered the premises of Take Two Video [a Frank Store] located at 710 Eldorado Dr., Bloomington, Illinois. After a lengthy and thorough investigation, the U.S. Marshals seized and removed from the premises approximately five hundred eighty-seven (587) videocassettes which lacked professional packaging and labeling, heat stamps and other indices of originality.

> On July 16, 1996, a team of U.S. Marshals, MPAA investigators and I, ... entered the premises of the Frank residence, located at 1814 Ft. Jesse Road, Normal Illinois. In

the basement of Frank's house, I ... discovered a room built of plywood approximately ten feet by ten feet in size. The U.S. Marshals seized and removed from the premises over three hundred (300) videocassettes which lacked ... indices of originality or were masters of illegal duplicates. In addition, the U.S. Marshals also seized various items being used to manufacture illegally duplicated videocassettes, including seven (7) videotape duplicating machines *engaged in the process of duplication,* an office sized Canon Color Copier, sealed packets of blank BASF videotapes, duplicate labels and boxes in various stages of production, adhesive spray, plastic sealer and a paper cutter.

During the seizures executed at each location on July 16, 1996, I or someone under my control examined each and every videocassette seized. During this inspection, the videocassettes were visually inspected for ... indices of originality contained in or on authorized videocassettes produced by or on behalf of the plaintiff owning the copyright or distribution rights. *Each videocassette seized was an illegal duplicate or master used to make an illegal duplicate.*

On July 16, 1996, and July 24, 1996, *Frank admitted that he produced illegally duplicated videocassettes* rented and sold at the video stores from which the U.S. Marshals seized illegally duplicated videocassettes on July 16, 1996.

(*See* Doc. # 44, Affidavit of David R. Hirtz at ¶¶ 25, 26, 28, 29, and 32) (emphasis added). Based on the undisputed statements contained in the Hirtz affidavit, the Court finds that Defendant Frank illegally *copied* motion pictures to which Plaintiffs own the copyright or distribution rights. *See Wildlife Express,*

18 F.3d at 507 (to establish liability for copyright infringement plaintiff must prove, inter alia, copying by the defendant).

### Copying by Defendant Landa

Plaintiffs concede that there is little or no direct evidence that Defendant Landa copied the protected material. Thus, Plaintiffs ask the court to infer Landa's copying of Plaintiffs' motion pictures. (*See* Doc. # 42 at p. 7 (*citing Atari,* 672 F.2d at 614)) (evidence of copying may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work).

In the *record* before the Court, Defendant Landa does not dispute that he copied Plaintiffs' protected works.[6] Indeed, Defendant Landa only disputes (1) whether his actions were willful, (2) whether statutory damages of $1,000 is reasonable and (3) whether a permanent injunction should be issued.[7] Nevertheless, the Court will assess whether ample evidence exists to draw the inference that Landa copied Plaintiffs' copyrighted works.

In *Columbia Pictures v. Zakarian,* a number of motion picture producers and distributors (hereinafter collectively referred to as ("Columbia") brought a copyright infringement action against Defendant, Anoushir Zakarian, a video rental store owner. 1991 WL 93889 at *1. Columbia alleged that Zakarian had infringed their copyrights by duplicating motion pictures in videocassette form or by engaging in the rental or sale of unauthorized duplicate videocassettes. *Id.*

Pursuant to a writ of seizure issued by the district court, United States Marshals entered Zakarian's video rental store and seized numerous illegally duplicated motion picture videocassettes to which Columbia

---

**6.** The contrary assertion by Defendant Landa in the affidavit attached to his Memorandum in Response to Plaintiff's Motion for Summary Judgment is *not* part of the record since the Court has excluded the affidavit for Landa's failure to comply with Local Rule 7.1. *See supra.* at pp. 3–4.

**7.** Specifically, Defendant Landa states:

Landa does not dispute that Plaintiffs are the owners of valid copyrights of the motion pictures. Nor does Landa dispute that unauthorized videotapes were present in his stores and were seized by agents for Plaintiff. Landa disputes three items: that his actions were willful; that statutory damages in the amount of $1000 per infringed title is reasonable and the need for permanent injunction.
(*See* Doc. # 53 at p. 1–2).

owned copyrights. *Id.* at *1–2. In response to Columbia's motion for summary judgment, Zakarian maintained that she never duplicated videocassettes and that she lacked "the technical ability or video equipment" to do so. *Id.* at *2. Nevertheless, the court granted Columbia's motion for summary judgment. *Id.*

In granting Columbia's motion the court determined that Columbia (1) *owned valid copyrights* to the motion pictures contained in the seized videocassettes and (2) that Zakarian had illegally duplicated, that is *copied,* the protected motion pictures. *Id.* In finding that Zakarian had copied the motion pictures, the district court employed the "access" and "substantial similarity" test as announced in *Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 614 (7th Cir.1982). The court found that Zakarian obviously had "access" to the copyrighted material because she admitted to having 10,000 videocassettes in stock in her video rental store. *Id.* The court went on to explain:

> As in most cases of copyright infringement, however, direct evidence that Zakarian copied plaintiffs' motion pictures is absent here. Yet, the Court may *infer* illegal copying in these circumstances from the facts that defendant had easy *access* to the copyrighted materials and that the duplicate videocassettes are identical to the copyrighted motion pictures.... [The MPAA investigator, in his sworn affidavit] attests that 144 of the 184 videocassettes seized from Zakarian's business were illegal duplicates, meaning that they were copied from one videocassette to another without the authorization of the copyright holder.... A duplicate is for all practical purposes identical to the original. Thus, such a duplicate videocassette no doubt meets the substantial similarity test. Because *access* and *substantial similarity* have been established ... plaintiffs have made their case for copyright infringement ...

1991 WL 93889 at *3 (emphasis added).

■ In the instant case, the sworn undisputed affidavit of Hirtz warrants an inference

that Defendant Landa illegally duplicated, i.e., copied, motion pictures to which Plaintiffs own valid copyrights or trademark rights. Just as in *Zakarian,* the MPAA investigator, Hirtz in this case, states that the videotapes seized from the Landa stores contained motion pictures to which Plaintiffs own the copyrights and that the videotapes were "duplicates" of Plaintiffs' protected material. Specifically, the Hirtz affidavit states:

> On July 16, 1996, terms of United States Marshals, MPAA investigators and I, ... *entered the premises of the Landa stores.* After lengthy and thorough investigation, the U.S. Marshals seized and removed from the premises over three thousand (3,000) videocassettes which lacked professional packaging and labeling, heat stamps and other indices of originality.

> During the seizures executed at the Landa stores on July 16, 1996, I or someone under my control examined each and every videocassette seized from the Landa stores. During this inspection, the videocassettes were visually inspected for ... indices of originality contained in or on authorized videocassettes produced by or on behalf of the plaintiff owning the copyright or distribution rights. *Each videocassette seized was an illegal duplicate.*

> Each of the illegally duplicated videocassettes seized at the Landa stores to which a plaintiff owns the copyright or distribution rights contains trademarks, trade names and designations of origin reflecting and indicating that the videocassettes originated with Plaintiff companies.

(*See* Doc. # 44 at ¶¶ 15, 17, and 18) (emphasis added). The Hirtz affidavit clearly establishes that Defendant Landa had "access" to the copyrighted work and that the motion pictures seized from the Landa stores were "duplicates" of Plaintiffs' protected motion pictures. *See Atari,* 672 F.2d at 614; *see also Columbia Pictures v. Zuniga,* 1995 WL 632249 at *3 (N.D.Ill.1995) ("A duplicate is for all practical purposes identical to the original.") (*quoting Columbia Pictures v. Zakarian,* 1991 WL 93889 at *3 (N.D.Ill.1991)).[8]

---

**8.** *See also Columbia Pictures Industries, Inc. v.* *Richardson,* No. 95–C–0868, slip op. at 7, 1996

Moreover, Defendant Landa does not dispute these facts. Accordingly, the Court finds that the reasonable inference drawn from the uncontroverted evidence presented by Plaintiff is that Defendant Landa copied Plaintiffs' protected material.[9]

In sum, Plaintiffs have established the liability of both Defendant Landa and Frank by proving that (1) Plaintiffs own valid copyrights to the motion pictures seized and that (2) the Defendants illegally duplicated the protected material. *See Wildlife Express*, 18 F.3d at 507.

## DAMAGES

Section 504(c) of the Copyright Act allows a copyright holder to elect statutory damages in lieu of actual damages. *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 292 (9th Cir.1997). If statutory damages have been elected, and a defendant is found to have infringed, damages are to be awarded "in a sum of not less than $500 or more than $20,000 as the court considers just." *Id.* (*citing* 17 U.S.C. § 504(c)(1)); *see also International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir.1988) (same). Additionally, if the "court finds . . . that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $100,000," and if the court finds that the infringement was committed innocently "the court [in] its discretion may reduce the award of

statutory damages to a sum of not less than $200." *Id.* (*citing* 17 U.S.C. § 504(c)(2)). Specifically, section 504 provides in part:

(a) In General.—Except as otherwise provided by this title, an infringer of copyright is liable for either—

(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

(2) statutory damages, as provided by subsection (c).

(c) Statutory Damages.—

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in this action, with respect to any one work, for which any one infringer is liable individually, or for which any two infringers are liable jointly and severally, *in the sum of not less than $500 or more than $20,000 as the court considers just.* For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $100,000 . . .

(17 U.S.C. § 504) (emphasis added).

 The district court has wide discretion in determining the amount of statuto-

WL 928200 (W.D. Wis. June 6, 1996), a case cited by Defendant Landa and attached to his response memorandum where the court stated: "The fact that sale or rentals of unauthorized copies of plaintiffs' copyrighted films took place in defendant's store is sufficient to establish liability."

9. Moreover, an alternative theory clearly establishes Landa's liability for copyright infringement. Section 106(3) of Title 17, provides that the owner of a copyright has the *exclusive* rights to *distribute* copies of copyrighted work to the public by sale or by rental. Section 106 further provides that the owner of the copyright may authorize others to distribute the copyrighted material. In this case, the undisputed evidence shows that David Hirtz, on May 14, 1996, and June 14, 1996, entered the Landa stores and

rented/purchased twenty-nine (29) illegally duplicated videocassettes. (Doc. # 44 at p. 6 ¶ 14). In addition, the evidence shows that Plaintiffs owned the copyrights to all twenty-nine movies rented or purchased by Hirtz. (*Id.* at p. 6–8). Finally, the evidence establishes that Plaintiffs never authorized Defendant Landa to duplicate, rent, or sell the motion pictures rented or sold by Defendant Landa. (Doc. # 43 at p. 8, ¶ 43). Therefore, the uncontradicted evidence reveals that Defendant Landa, without proper authorization, illegally distributed to the public copyrighted material owned by Plaintiff. Thus, whether the Court draws the inference that Landa copied the protected material or finds that Landa distributed illegally duplicated videocassettes, does not change the result; Landa is liable for copyright infringement pursuant to 17 U.S.C. § 106.

ry damages to be awarded, constrained only by the specified maxima and minima. *Kowalczyk*, 855 F.2d at 383 (*citing L.A. Westermann Co. v. Dispatch Printing, Co.*, 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499 (1919)); *see also Illinois Bell Telephone Co. v. Haines & Company, Inc.*, 905 F.2d 1081, 1089 (7th Cir.1990) (same). The district court is afforded wide discretion since the trial court is in a better position to determine appropriate damages. *Id.* In awarding statutory damages it is proper for the district court to seek to penalize the infringer for their ill begotten profit and to deter future violations. *Haines & Company, Inc.* 905 F.2d at 1089. In addition, the damage award should "put potential infringers on notice that 'it costs less to obey the copyright laws than to violate them.'" *Id.* (*quoting Kowalczyk*, 855 F.2d at 383); *see also Flyte Tyme Tunes v. Miszkiewicz*, 715 F.Supp. 919, 922 (E.D.Wis.1989) ("[T]he Court considers a violation of copyright laws a serious matter requiring deterrence . . .").

Finally, in measuring the damages, the court is guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like . . . but with the express qualification that in every case the assessment must be within the prescribed [maximum and minimum]." *Peer International Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir.1990). Within these limitations the court's discretion and sense of justice are controlling. *Id.* (*citing F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952)) (*quoting L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 106–07, 39 S.Ct. 194, 195–96, 63 L.Ed. 499 (1919)).

### Damage Award

In the instant action, Plaintiffs do not seek a finding that the infringing acts of Defendants were willful. (*See* Doc. # 61 at p. 8). Rather, Plaintiffs insist that an award against Landa and Frank in the amount of $1,000 per infringement is just and proper. Specifically, Plaintiffs state:

> Given the enormous number of works infringed by Landa and Frank, plaintiffs be-

lieve that an award of $1000 per work infringed would be just and reasonable in these circumstances.

(Doc. # 42 at p. 11).

However, Defendant Landa maintains that the amount sought by Plaintiffs is unreasonable and that an award of $200 per infringed title is appropriate. Specifically, Landa states:

> There has been no evidence that Landa's actions were willful violations of Plaintiffs' copyright infringements and, accordingly, statutory damages of $200.00 per infringed title is appropriate. This amounts to total damages of $41,500.

(*See* Doc. # 53 at p. 3). The Court notes that Defendant Landa does not offer a legal basis nor evidentiary support for an award of $200.

██ U.S. Marshals seized over three thousand (3,000) video tapes with two hundred and seven (207) movie titles at the Landa stores. Furthermore, Landa began infringing Plaintiffs' copyrights over one year ago and has continued to infringe upon Plaintiffs' copyrights. In addition, Defendant Landa operated four stores from which he rented the illegally duplicated videocassettes.

On July 16, 1996, U.S. Marshals seized over one thousand (1,000) unauthorized duplicate videocassettes from the Frank store and residence. U.S. Marshals also seized from the Frank residence various items being used in the manufacture of illegally duplicated videocassettes, including seven video duplicating machines. Two hundred and sixteen (216) separate copyrighted movie titles were seized from Defendant Frank. Finally, on or about July 16, 1996, and July 24, 1996, Defendant Frank admitted that he produced illegally duplicated videocassettes rented and sold at the video stores from which the U.S. Marshals seized illegally duplicated videocassettes.

Given the pervasive nature of Landa's and Frank's illegal activity, as well as their apparent and total disregard for copyright law, the Court finds that an award of $1,000 per infringement is just and proper. Since Defendant Landa and Frank *collectively* in-

fringed upon 207 individual movie titles the Court will award Plaintiffs a total award of $207,000.00. *See Hodge E. Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 144 n. 11 (1992) (*citing Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C.Cir.1990))(court explained that "[b]oth the text of [section 504(c)(1)] and its legislative history make clear that statutory damages are to be calculated according to the number of works infringed, not the number of infringements ... [O]nly one penalty lies for multiple infringements of one work."). The Court believes that this award will put future infringers on notice that it "cost less to obey the copyright laws than to violate them." *See Haines & Company Inc.*, 905 F.2d at 1089. Moreover, the Court believes that this award will properly penalize Landa and Frank for their ill begotten profit. *See Id.*

### Permanent Injunction

A permanent injunction is appropriate under Section 502 of the Copyright Act when there still exists the threat of continuing or ongoing infringement of the plaintiffs' rights. Powell, 897 F.2d at 567 (*citing Universal City Studios, Inc. v. Sony Corp. of America*, 659 F.2d 963, 976 (9th Cir.1981), *rev'd on other grounds*, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984)); *see also Columbia Pictures Industries, Inc. v. Zuniga*, No. 95–2474, 1995 WL 632249, at *5 (N.D.Ill. Oct. 25, 1995) (same) Section 502 of the Copyright Act, specifically allows the district court to issue injunctions in copyright cases.

Section 502 provides in part:

Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of Title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

(17 U.S.C. § 502(a)).

Defendant Landa argues that the Court should *not* grant a permanent injunction in

this case because "there is no evidence that Landa will continue to infringe on Plaintiff's copyrights ..." (Doc. # 53 at p. 3). Conversely, Plaintiffs argue that a permanent injunction is appropriate because "Landa continues to rent and sell illegally duplicated videotapes at his video stores ..." (Doc. # 61 at p. 4–5).

Since the filing of Plaintiffs' motion for summary judgment investigator Hirtz and/or agents acting at his direction have rented numerous illegally duplicated videotapes from the Landa stores. (*See* Affidavit of Hirtz filed on January 13, 1997 at p. 1–8).[10] Thus, it is clear, at least as to Defendant Landa, that there is in fact a continuing threat of copyright infringement. *See Powell*, 897 F.2d at 567. Furthermore, given the pervasive nature of the Defendants' illegal activity, it appears that Defendant Landa and Frank may continue their wrongful conduct unless they are restrained. *See e.g. Canopy Music Inc. v. Harbor Cities Broadcasting, Inc.*, 950 F.Supp. 913, 915 (E.D.Wis. 1997). Finally, a permanent injunction pursuant to 17 U.S.C. § 502(a) is not unusual. *See e.g. Dream Dealers Music v. Parker*, 924 F.Supp. 1146 (S.D.Ala.1996); *Broadcast Music Inc. v. R Bar of Manhattan, Inc.*, 919 F.Supp. 656 (S.D.N.Y.1996); *Flyte Tyme Tunes v. Miszkiewicz*, 715 F.Supp. 919 (E.D.Wis.1989); *Coleman v. Payne*, 698 F.Supp. 704 (W.D.Mich.1988); *Golden Torch Music Corp. v. Pier III Cafe, Inc.*, 684 F.Supp. 772 (D.Conn.1988). Accordingly, the Court will enter the permanent injunction sought by Plaintiffs.

### CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment [Doc. # 41] is **GRANTED**. Summary judgment on Count I of Plaintiffs' Amended Complaint is granted in favor of Plaintiffs and against Defendant Landa and Frank jointly and severally in the amount of $207,000.00. IT IS FURTHER ORDERED that Defen-

---

10. As noted from the outset, Defendant Frank never responded to Plaintiffs' motion for summary judgment. Thus, the Court will summarily grant a permanent injunction as to Defendant Frank.

dant Domingo Landa's Motion to Stay Ruling on Plaintiff's Motion for Summary Judgment [Doc. # 51] is **DENIED** as **MOOT**. IT IS FURTHER ORDERED that Plaintiffs file with the Court proposed language for the PERMANENT INJUNCTION within fourteen (14) days of the date of this Order.