PEER INTERNATIONAL CORPORA-
TION, on behalf of itself and all others
similarly situated, Plaintiff–Appel-
lee/Cross–Appellant,

v.

PAUSA RECORDS, INC., and Jack New-
man,
Defendants–Appellants/Cross–Appellees.

Nos. 88–6752, 89–55068.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1990.

Decided July 30, 1990.

Sanford R. Demain, Van Nuys, Cal., for defendants-appellants/cross-appellees.

Alan L. Shulman and Barry I. Slotnick, Silverman, Shulman & Slotnick, New York City, for plaintiff-appellee/cross-appellant.

Before CANBY and LEAVY, Circuit Judges, and ORRICK,* District Judge.

LEAVY, Circuit Judge:

This is a class action for copyright infringement brought by Peer International Corp. ("Peer") on behalf of itself and several hundred similarly situated copyright owners against Pausa Records, Inc. ("Pausa") and its principal officer, Jack Newman. The action arises from the defendants' failure to comply with the compulsory licensing provisions of the Copyright Act of 1976, 17 U.S.C. § 115 (1982 & Supp. II 1984). The defendants appeal from the grant of summary judgment in favor of the plaintiffs and the award of $4 million in statutory damages. The plaintiffs cross-appeal from the court's order denying them statutory damages for the defendants' sales of copyrighted works prior to the termination of the compulsory licenses. We affirm.

## FACTS AND PROCEEDINGS

Peer brought this action on behalf of itself and several hundred other copyright owners ("class plaintiffs"). Peer and the class plaintiffs, through their common agent, The Harry Fox Agency ("Fox"), issued licenses to defendant Pausa at its request. The licenses entitled Pausa to manufacture, distribute, and sell certain copyrighted nondramatic musical compositions. The license agreements constituted written variations of the compulsory licensing provisions of the Copyright Act of 1976, 17 U.S.C. § 115, and expressly incorporated and preserved all statutory rights and remedies provided for copyright infringement.

Beginning in 1980, Pausa repeatedly failed to pay royalties and render statements of account when due as required by the licenses and section 115(c)(4). Fox made numerous written demands on Pausa to comply with its statutory and contractual obligations. In accordance with section 115(c)(5), on December 26, 1984, Fox gave written notice to Pausa that the licenses would automatically terminate unless it rendered a statement of accounts and/or the payment of royalties due within thirty days.

Pausa did not remedy the defaults within the thirty-day period and the licenses automatically terminated as of December 26, 1984. Such termination rendered "either the making or the distribution, or both, of all [copyrighted works] for which the royalty [had] not been paid, actionable as acts of infringement." 17 U.S.C. § 115(c)(5). Pausa nevertheless continued to manufacture and distribute some of the copyrighted musical compositions following the termination.

On December 17, 1985, the plaintiffs filed this action for copyright infringement. On February 8, 1988, the district court granted summary judgment in favor of the plaintiffs. The court found that the defendants knowingly and willfully infringed the plaintiffs' copyrights due to their failure to account for and pay royalties, and their continued manufacture and distribution of those works after receiving the plaintiffs' notice of intent to terminate. The court

---

* Hon. William H. Orrick, Senior U.S. District Judge for the Northern District of California, sitting by designation.

awarded the plaintiffs the statutory maximum of $50,000 for each "willful" infringement for a total of $4 million in damages based on the eighty incidents wherein Pausa sold or manufactured the copyrighted works after the license termination. The court refused, however, to award statutory "infringement" damages for each sale by Pausa prior to December 26, 1984, for which royalties had not been paid. This timely appeal and cross-appeal followed.

## DISCUSSION

### I. APPEAL BY PAUSA

Pausa argues that summary judgment on the plaintiffs' copyright infringement claim was improper because genuine issues of material fact exist as to: (1) whether the letter of December 26, 1984, was an effective termination or revocation of the licenses; (2) if so, whether the infringements were willful; and (3) the amount of statutory damages to be awarded.

#### A. License Revocation

The district court found that the letter of December 26, 1984, constituted a revocation of the licenses. Pausa argues there is a question of fact as to whether, in light of the previous dealings between the parties and their dealings after December 26, 1984, the letter was intended to be and should reasonably be construed as a revocation of the licenses.

■ Pausa first argues that a genuine issue of fact exists as to Fox's intent to revoke because beginning in 1980 and continuing until December 26, 1984, Fox made approximately twenty demands upon Pausa, four of which Pausa claims "purported to revoke licenses issued to" them. Despite these demands and revocations, Fox continued to accept payments and issue licenses to Pausa.

Contrary to Pausa's assertions, only one letter dated September 14, 1982, actually states that it constitutes formal notice of license termination pursuant to section 115(c). Newman Declaration, Exh. 4. The other three letters written between August 1, 1980, and July 30, 1982, merely threaten legal action if overdue royalties and accountings were not forthcoming. Newman Declaration, Exhs. 1–3. We are not told which licenses the September revocation applied to or whether Pausa complied with its statutory obligations in response to the notice of revocation. We find this single letter of revocation insufficient to create a triable issue of fact as to the plaintiffs' intention to revoke the licenses at issue a full two years later in December 1984.

■ Pausa also argues that a genuine issue of fact as to Fox's intent to revoke exists because Fox continued to issue licenses to Pausa after the revocation on December 26, 1984. Pausa admits, however, that none of the licenses issued after December 26, 1984, were also licenses subject to the December revocation.[1] Because the plaintiffs' copyrighted works are governed by the compulsory licensing provisions of section 115(c), the plaintiffs also could not prevent the defendants from obtaining licenses to use other copyrighted works not subject to the revocation.[2] Therefore, the fact that Fox issued other licenses after December 1984 does not raise a genuine issue of fact as to the plaintiffs' intent to revoke the licenses specified in the December letter.

■ Pausa next contends that the plaintiffs' "acceptance" of a $5,000 payment on account thirty days after December 26, 1984, raises a question of fact as to their intent to terminate. The evidence establishes that Fox deposited the $5,000 in an escrow account on or near July 10, 1985, pending an explanation from Pausa as the

---

1. The district court held "[o]nly a new license for a copyrighted work used on the particular phonorecords to which the revocations applied would place liability for infringement based on the termination of the licenses at issue.... None of the new licenses issued to Pausa fall into this category."

2. Once the owner of a copyright in a nondramatic musical work distributes copies of that work to the public, any other person may obtain a license to make and distribute that work from the U.S. Copyright Office simply by giving the copyright owner notice of his intention to do so. See 17 U.S.C. § 115(a)–(b).

payment was unaccompanied by a royalty statement. Pausa argues Fox's failure to return the check raises an inference it "intended to retain the money which of course, was inconsistent with its present claim that the licenses had been revoked."

The district court held, and we agree, that this evidence is insufficient to create a genuine issue of fact for trial.

> [D]efendants do not dispute that, although they made sporadic payments, they never complied with the royalty and accounting requirements of the [Copyright Act]. Moreover, defendants do not dispute that plaintiffs placed such payments in escrow and at all time continued to demand compliance with the statutory provisions. Defendants submit no evidence that would even suggest plaintiffs intended to waive their rights to sue for infringement.

Pausa also fails to show the $5,000 represented payment on royalties due under the licenses terminated in December 1984, as opposed to payment on other nonrevoked licenses. Consequently, the payment, even if accepted, is insufficient to raise a triable issue of fact as to Fox's intent to revoke.

■ In another effort to show that the parties accorded no special significance to the December letter, Pausa claims that by letter dated March 27, 1985, Fox again threatened revocation of the licenses unless payment was received by April 12, 1985. Newman Declaration, Exh. 8. The March letter was not sent by Fox, however, but by Prager and Fenton, an accounting firm engaged by Fox to examine Pausa's records to determine the amount of royalties overdue for the period between July 1, 1983, and June 30, 1986. Having assessed a deficiency of $129,015.00, the letter advises that Fox would allow additional time no later than April 12, 1985, for Pausa to furnish a meaningful response and downpayment. The letter concludes that if this deadline was not met, Fox "intend[ed] to discuss with the involved publishers revocation of licenses as well as infringement proceedings."

Once again, there is no evidence this threatened revocation covered the same licenses identified in the December letter. Under these circumstances, such evidence is insufficient to create a triable issue of fact with respect to the plaintiffs' intent to revoke the licenses. We find that the December letter effectively revoked the licenses at issue.

## B. Willful Infringement

■ Section 504(c)(1) of the Copyright Act provides that the copyright owner may elect to recover, instead of actual damages and profits, an award of statutory damages "in a sum of not less than $250 or more than $10,000" for each infringement. The provision governing willful infringement says:

> In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $50,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court [in] its discretion may reduce the award of statutory damages to a sum of not less than $100.

17 U.S.C. § 504(c)(2) (1982) (footnote omitted).

The district court held that the plaintiffs met their burden of establishing willful infringement. The court defined "willful" as "knowledge that the defendants' conduct constituted an act of infringement."[3] The court found the infringements were willful because of "Mr. Newman's [deposition] testimony that defendants received the December 26, 1984 notice of termination, failed to account for and pay royalties, yet

---

**3.** Neither the Copyright Act or its legislative history defines "willful." However, "[i]t seems clear that as here used 'willfully' means with knowledge that the defendant's conduct consti-tutes copyright infringement." 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 1404[B], at 14–40.2–.3 (1989).

nevertheless continued to manufacture and distribute phonorecords." The court found that Mr. Newman's contradictory declaration that it was not Pausa's intention to infringe upon the plaintiffs' copyrights was insufficient to raise a material issue of fact as to willfulness. *See Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir.1975) (party cannot raise a *genuine* issue of fact by an affidavit contradicting his prior deposition testimony).

Pausa claims it is entitled to a full evidentiary hearing to determine whether its conduct was willful in light of the fact the parties disagreed over the applicable royalty rates. This argument is not persuasive. The royalty dispute Pausa refers to did not surface until well after the plaintiffs had terminated the licenses. The defendants cannot claim that their failure to pay royalties resulted from a dispute over the applicable royalty rate where they failed, in the first instance, to submit statements of account identifying the royalties due.

The defendants also argue that summary judgment was improper in light of their belief Fox did not intend the December letter to be a revocation. To refute evidence of willful infringement, Pausa must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief. *See* 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 14.04[B], at 14–40.3 (1989). The December letter was unambiguous in its statement of intent to terminate the licenses if payment was not received within thirty days. Pausa, a corporation engaged in the business of manufacturing and distributing copyrighted works, does not claim ignorance as to its legal obligations. Fox's conduct following Pausa's receipt of that letter cannot reasonably be construed as a withdrawal of its intent to terminate the licenses. We find that Pausa's conduct in ignoring the revocation was unreasonable, and that its further use of the plaintiffs' copyrighted works thereafter was willful as a matter of law within the meaning of section 504(c)(2).

**4.** The statutory maximum was increased to $100,000 per infringement as of March 1, 1989.

### C. Amount of Statutory Damages

■ Assuming the infringements were willful, Pausa argues there is a genuine issue of fact as to the proper amount of statutory damages to be awarded. Pausa claims the $4 million award, or eighty violations at $50,000 apiece, represents an abuse of discretion because it bears no relationship to the plaintiffs' actual damages.

Under the 1976 Copyright Act, the plaintiff may elect to recover either actual or statutory damages. *See* 17 U.S.C. § 504(c)(1). If statutory damages are elected, "[t]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984). The maximum award for willful infringements is $50,000,[4] and the minimum $250, per infringement. *See* 17 U.S.C. § 504(c)(2). In measuring the damages, the court is to be guided by

> "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like, ... but with the express qualification that in every case the assessment must be within the prescribed [maximum or minimum]. Within these limitations the court's discretion and sense of justice are controlling...."

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952) (quoting *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 106–07, 39 S.Ct. 194, 195–96, 63 L.Ed. 499 (1919)). The award will be overturned only for abuse of discretion. *Harris*, 734 F.2d at 1335.

The district court in this case awarded the maximum damages possible, or $50,000 per violation, for each of the eighty willful infringements. Pausa argues the statutory damage provisions "should not be converted into a windfall where, as a practical matter, the plaintiff has suffered only nom-

*See* 17 U.S.C. § 504(c)(2) (1988).

inal damages." *Doehrer v. Caldwell*, 207 U.S.P.Q. 391, 393, 1980 WL 1158 (N.D.Ill. 1980) (nonwillful infringements). It is clear, however, that a plaintiff may recover statutory damages "whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendant." *Harris*, 734 F.2d at 1335. The Supreme Court has stated that "[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within [the] statutory limits to sanction and vindicate the statutory policy" of discouraging infringement. *Woolworth Co.*, 344 U.S. at 233, 73 S.Ct. at 225.

In affirming the district court's award of the maximum damages permissible in the absence of a specific finding of willfulness ($10,000 per infringement), we stated in *Harris* that "[t]he trial court is in a better position than are we to determine appropriate damages." 734 F.2d at 1335. Given the number of willful infringements committed by Pausa, the compulsory nature of the licenses, and the fact Pausa is engaged in the business of selling copyrighted works, we find the court did not abuse its discretion in awarding $4 million in statutory damages.

## II. APPEAL BY PEER AND THE CLASS PLAINTIFFS

■ The plaintiffs claim the trial court erred in holding that the defendants' failure to pay royalties before the plaintiffs terminated their compulsory licenses did not constitute infringement where the "defendants did not continue to sell, distribute or otherwise make use of the works ... after termination of the compulsory licenses." The plaintiffs were only awarded statutory "infringement" damages for those works which the defendants contin-

ued to make or sell after receiving the notice of termination.[5]

The Copyright Act provides "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118 ... is an infringer of the copyright." 17 U.S.C. § 501(a). The owner of a copyright has the exclusive right to reproduce or distribute phonorecords[6] of the copyrighted work. *Id.* § 106. However, once the owner of a copyright in a nondramatic musical work distributes phonorecords of that work to the public, any other person may obtain a compulsory license from the U.S. Copyright Office to make and distribute that work simply by giving the copyright owner notice of his intention to do so. *Id.* §§ 115(a)–(b). In exchange, the copyright owner is entitled to royalties each month at a statutory rate, plus a monthly statement of accounts, for every phonorecord made and distributed by the licensee. *Id.* § 115(c).

The statutory procedures for invoking the license under section 115 are rarely used, however. *See Recording Indus. Ass'n v. Copyright Royalty Tribunal*, 662 F.2d 1, 4 (D.C.Cir.1981).

> The usual effect of the system is to make the statutory royalty rate a ceiling on the price copyright owners can charge for use of their songs under negotiated contracts: if the owner demands a higher price in voluntary negotiations, the manufacturer can turn to the statutory scheme, but if the owner is willing to accept less than the statutory rate, he is free to do so.

*Id.* (footnote omitted). The parties in this case negotiated their own licenses using the statutory rate, but with royalty payments due on a quarterly, as opposed to a monthly, basis.

---

**5.** Following summary judgment, the court requested documentation as to each act of infringement. The plaintiffs submitted two lists: Schedule A, which set forth copyrighted works the defendants continued to manufacture or sell after the termination, and Schedule B, which represented works the defendants did not continue to make, sell, or distribute following termination but for which no royalties were paid.

**6.** "Phonorecords" are defined broadly as "material objects in which sounds, other than those accompanying a motion picture or other audiovisual work, are fixed by any method now known or later developed, and from which the sounds can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101.

At issue in this action is section 115(c)(5), which provides:

If the copyright owner does not receive the monthly payment and the monthly and annual statements of account when due, the owner may give written notice to the licensee that, unless the default is remedied within thirty days from the date of the notice, the compulsory license will be automatically terminated. Such termination renders either the making or the distribution, or both, of all phonorecords for which the royalty has not been paid, actionable as acts of infringement under section 501 and fully subject to the remedies provided by sections 502 through 506 and 509.

The plaintiffs argue that any pre-termination manufacture or distribution by the defendants for which no royalty payment was received within the thirty-day period constitute retroactive acts of infringement within the plain meaning of section 115(c)(5). The plaintiffs identify 216 (Schedule B) "infringements" of this type for which they claim entitlement to at least the statutory minimum of $250 per infringement under section 504.

The plaintiffs cite to *Norbay Music, Inc. v. King Records, Inc.*, 290 F.2d 617, 620 (2d Cir.1961), in which the court held a failure to cure defaults in the payment of royalties constituted an act of infringement under the 1909 Copyright Act. Under the 1909 Act, the copyright owner could sue for royalties under 17 U.S.C. § 1(e)[7] or for infringement under 17 U.S.C. § 101(e)[8]. The court in *Norbay* stated:

Section 101(e) clearly treats the term "infringement" as embracing "unauthorized manufacture" occurring after the copyright proprietor has licensed mechanical reproduction. Since a once-recorded composition is available to all third parties "upon the payment" of a two-cent royalty, manufacture at this point can be "unauthorized" only in that the third party fails to make the required payments. Thus § 101(e), in treating "unauthorized manufacture" as infringement, treats nonpayment of the statutory royalty as an act of infringement.

290 F.2d at 620.

The Copyright Act has changed significantly since it was interpreted in *Norbay*. While comparable to section 1(e) of the 1909 Act, section 115 of the 1976 Act is different both in terms of its language and the remedies provided. Most importantly, section 115 did not retain the "upon the payment" language of section 1(e) which the court found so persuasive in *Norbay*. Therefore, *Norbay's* interpretation of the 1909 Act to the effect that the failure to pay royalties in itself constitutes infringement is not conclusive here.

While the plaintiffs' construction of the 1976 Act is plausible, we find it inapplicable where, as here, the parties have negotiated their own licenses which vary from the statutory scheme. Generally, "anyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute ... is not an infringer of the copyright with respect to such use." *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 433, 104 S.Ct. 774, 784, 78 L.Ed.2d 574 (1984). In this case, the private license agreements granted Pausa the right to sell

---

7. Section 1(e) provided:
   [W]henever the owner of a musical copyright has used or permitted ... the use of the copyrighted work ... any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of two cents....
   In case of the failure of such manufacturer to pay to the copyright proprietor within thirty days after demand in writing the full sum of royalties due ... the court may, in its discretion, enter judgment therein for any sum in addition over the amount found to be due as royalty ... not exceeding three times such amount.

Copyright Act of 1909, ch. 320, 35 Stat. 1075, 1076 (current version at 17 U.S.C. § 115 (1988)).

8. Section 101(e) provided:
   Whenever the owner of a musical copyright has used or permitted the use of the copyrighted work ... then in case of infringement of such copyright by the unauthorized manufacture, use, or sale ... [the copyright owner may obtain an injunction and] shall be entitled to recover in lieu of profits and damages a royalty as provided [by section 1(e) ].
Copyright Act of 1909, ch. 320, 35 Stat. 1075, 1081–82 (amended 1976).

and distribute the plaintiffs' copyrighted works. Pausa's use was thus authorized for as long as the agreements remained in effect. Accordingly, Pausa's use of the copyrighted works up until the date of termination, December 26, 1984, was not an act of infringement entitling the plaintiffs to statutory damages.[9]

The plaintiffs are not entitled to additional statutory damages as the failure to pay royalties under a private license agreement is not an act of infringement within the meaning of section 115(c)(5).

AFFIRMED.

9. A common law action may exist to recover unpaid royalties. *See Nimmer on Copyright, supra* note 3, § 10.15[A], at 10–112–13 (failure to pay royalties under license agreement gives rise to breach of contract or rescission action).